**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.** ) | Case No.: **04-12696 DPW** |
| ) | |
| Plaintiff, ) | |
| ) | **PLAINTIFF'S MOTION FOR** |
| vs. ) | **DEFAULT JUDGMENT** |
| ) | |
| **Joyce Belanger** ) | |
| ) | |
| Defendant ) | |

    Plaintiff hereby moves this Court for a Judgment by Default against the Defendant in the above-entitled action.  The Plaintiff also requests that this Court assess non-liquidated damages, after considering the Plaintiff's filings, including the Affidavit of Comcast's employee, made herewith.  The Plaintiff contends that the court should be able to assess non-liquidated damages in this action based upon the facts as determined through the Defendant's default and any facts set forth in the Plaintiff's employee's Affidavit, all in accordance with Fed. R. Civ. P. 55(b)(2). However, should this Court determine that testimony is necessary or even helpful for the assessment of non-liquidated damages, the Plaintiff requests that such a hearing be scheduled.

    In support of this Motion, Plaintiff submits:

1. That a Default was entered against the Defendant on February 7, 2005.

2. That the Defendant has still failed to reply or otherwise defend the claims set forth in Plaintiff's Complaint;

3. That the Defendant is not an infant or incompetent;

4. That the Defendant is not in the military service; and,

5. That the Plaintiff is entitled to damages and other civil remedies as set forth below.

In further support of this Motion, please see:

1. Memorandum of Law in Support of Plaintiff's Motion for Default Judgment.

2. Affidavit of Attorney John M. McLaughlin.

3. Affidavit of Mark Mondalto, an employee of Comcast

4. Proposed Order of Default.

**WHEREFORE** Plaintiff respectfully requests that this Court enter Default Judgment in favor of the Plaintiff and against the Defendant for the following:

Pursuant to all of the above, the Plaintiff is entitled to a Default Judgment as follows:

1. Statutory damages $7,000.00 for the violations of 47 U.S.C. § 553(a) pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) and/or Title 47 U.S.C. § 553(c)(3)(B);

2. Costs $194.10 pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A) utilizing the following language or language of a similar nature:

   The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signals in violation of provisions of Title 47;

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961; and,

5. Attorney's fees of $923.00 pursuant to Title 47 U.S.C. 553(c)(2)(C).

Respectfully Submitted for the Plaintiff,
Comcast of Maine/New Hampshire, Inc.

By Its Attorney,

| | |
|---|---|
|   6/15/2005 | _____/s/ John McLaughlin_____ |
| Date | John M. McLaughlin |

**Green Miles Lipton & Fitz-Gibbon LLP**
77 Pleasant Street
P.O. Box 210
Northampton, MA 01061
Telephone:  (413) 586-0865
BBO No. 556328

**CERTIFICATE OF SERVICE**

    I, John M. McLaughlin, attorney for the Plaintiff, hereby certify that on the 14th day of June 2005, a copy of the foregoing Motion, Memo and affidavits were sent via first class mail to

                                            <u>/s/ John M. McLaughlin</u>
                                            John M. McLaughlin

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.** ) | Case No.: **04-12696 DPW** |
| ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF JOHN M.** |
| vs. ) | **MCLAUGHLIN, ESQ. IN SUPPORT OF** |
| ) | **MOTION FOR DEFAULT JUDGMENT** |
| **Joyce Belanger** ) | |
| ) | |
| Defendant ) | |

Now comes the affiant, and makes this his sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

### GENERAL FACTUAL ASSERTIONS

1. I, John M. McLaughlin, represent the Plaintiff in the above-entitled action.

2. I am a partner at the Law Firm of Green Miles Lipton & Fitz-Gibbon LLP.

3. I have used paralegals from the firm to assist me in this case.

### FACTUAL ASSERTIONS AS TO ATTORNEY'S FEES

4. My usual hourly rate is $200.00 per hour. The usual hourly rate of the paralegals in our firm is $90.00 per hour. These rates are more than reasonable for telecommunication civil litigation specialists.

5. I am a member of the Federal Communications Bar Association and I have been heavily involved in telecommunications litigation since the early 1990's. I have represented Comcast, ATTB, Cox, DirecTV and numerous MediaOne and/or Continental Cablevision corporate entities in hundreds of cases.

6. The time records have been edited to remove confidential communications with the client. The Plaintiff reserves the right to amend its claim for attorney's fees and costs should Plaintiff's Counsel have to attend a Default Hearing and Plaintiff

Page 1

may also bear certain costs with reference to said hearing. The details of the time records to-date are set forth below. Also, I have already reduced the billable time from the actual time spent on reviewing and sorting my time records to take into account the first circuit case of *Brewster v. Dukakis*, 3 Fed.3d 488, (1st Cir. 1993) which provides that attorney's fees for work on affidavit for fees should be billed at a reduced rate. The time referenced below includes all of the time claimed for this action except that for the purposes of this Default Judgment Motion the fees related to the Motions for extensions of time in this action and for the fees for New Hampshire counsel are not being sought.

**ATTORNEY'S HOURS:**

| | | |
|---|---|---|
| 12/20/04 | Review Draft of Complaint | .30 |
| 5/19/05 | Draft Motion and Memorandum and Affidavit | 2.00 |

**SUBTOTAL of hours** 2.30
At $200.00 per hour

**SUBTOTAL amounts**                                                          **$460.00**

**PARALEGAL'S HOURS:**

| | | |
|---|---|---|
| 12/17/04 | Draft Complaint | .70 |

**SUBTOTAL of hours**
At $90.00 per hour

**SUBTOTAL amount**                                                            **$63.00**

**Total Amount**                                                               **$523.00**

Page 2

7. No attorney's fees have been paid by the Plaintiff in the case at bar because the case is covered by a contingency fee agreement and there has not been and may never be any actual recovery.

**OTHER FACTUAL ASSERTIONS**

8. The Default of the Defendant has been entered for failure to appear in this action.

9. The undersigned believes the Court can assess statutory damages in this matter without testimony. Yet, if the court believes testimony is necessary or even helpful, the Plaintiff will fully cooperate and provide fact witnesses and/or expert witnesses if required.

10. On information and belief, the Defendant is not an infant or an incompetent and the Defendant is not in the military service

Subscribed and sworn to, under the pains and penalties of perjury, this 14th day of June 2005.

　　　　　　　　　　　　　　　　　　　　　　　__/s/ John M. McLaughlin_____
　　　　　　　　　　　　　　　　　　　　　　　John M. McLaughlin
　　　　　　　　　　　　　　　　　　　　　　　**Green Miles Lipton & Fitz-Gibbon LLP**
　　　　　　　　　　　　　　　　　　　　　　　77 Pleasant Street
　　　　　　　　　　　　　　　　　　　　　　　P.O. Box 210
　　　　　　　　　　　　　　　　　　　　　　　Northampton, MA 01060
　　　　　　　　　　　　　　　　　　　　　　　Telephone:  (413) 586-0865
　　　　　　　　　　　　　　　　　　　　　　　BBO No. 556328

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Comcast of Massachusetts I, Inc. ) | Case No.: **04-12696 DPW** |
| ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF** |
| vs. ) | **MARK MONDALTO** |
| ) | |
| Joyce Belanger ) | |
| ) | |
| Defendant ) | |

Now comes the affiant, and makes this her sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

1. My name is Mark Mondalto.

2. I am employed by Comcast as an Area Piracy Specialist.

3. I am familiar with the business records of Comcast associated with the Defendant, Joyce Belanger.

4. I have been trained and I am familiar with the testing of converters/descramblers to determine if such devices have been modified to receive unauthorized interception of signals.

5. A particular converter/descrambler, bearing serial number CA79ABKRD, was issued by a predecessor in interest of Comcast to the Defendant on November 1, 1990.

6. Converter/descrambler CA79ABKRD was returned to a predecessor in interest of Comcast by the Defendant on January 2, 2002.

7. Shortly after Converter/descrambler CA79ABKRD (hereinafter the "device") was returned to the Plaintiff, the device was tested by an employee of a predecessor in interest of Comcast and the test evidenced the fact that this device had been electronically modified while in the possession of the Defendant so as to allow for the

unauthorized reception of secured cable system programming including premium and pay per view channels.

8. This Defendant's account history reveals that the Defendant that only purchased standard, non-premium service while in possession of the device and did not order premium channels or pay-per-view offerings well in possession of the device.

9. Based upon these facts, and absent other evidence, it is reasonable to infer that the device was modified after a device went into the home in November 1990 and was utilized to obtain unauthorized interception of premium channels and pay per view events until the device was returned to the Plaintiff in January 2002.

10. Accordingly, it can be inferred that the duration of the unauthorized interception was approximately 146 months.

11. An individual in possession of a descrambling device would still need to purchase some cable television signals from the Plaintiff in order to allow signals to enter the home and thereafter be descrambled.

12. Additionally, the non-premium cable television stations (e.g. MTV, The History Channel, etc.) are offered to subscribers in groupings of channels ("tiers"). These channels are either delivered in groups to the subscriber in a non-scrambled fashion or they are simply not delivered into the home at all. This also explains why an individual with a descrambling device might still be paying a significant amount to the cable television company while utilizing a descrambler to descramble the premium channels. If an individual wanted access to all stations that individual would have to pay to have the non-scrambled stations come into the home and then

use the descrambling device to scramble the premiums stations and pay-per-view offerings.

13. During the above referenced 146 month period the pricing for standard service ("tiers") varied significantly but taking into account the length of time and the variations in price it is reasonable to state that Defendant was paying *on average* $8.29 per month for her service from the Plaintiff. This service did not include any scrambled premium stations.

14. During the above referenced 146 month period the charge for all of the premium channels that would have been available to the Defendant through the use of the device varied significantly but taking into account the length of time and the variations in price it is reasonable to state that price *on average* was $65.00 per month. This $65.00 figure represents the value of the premium channels the Defendant had access to over and above the non premium stations she was actually paying for.

15. During the above referenced 146 month period the charge for and the number of pay per view movie offerings that were accessible to the Defendant through the use of the device varied significantly but taking into account the length of time and the variations in price it is reasonable to state that price *on average* was $3.95 per movie and there were numerous movies offered per month.

16. During the above referenced 146 month period the charge for and the number of adult pay per view movie offerings that were accessible to the Defendant through the use of the device varied significantly but taking into account the length of time and the

variations in price it is reasonable to state that price *on average* was $8.00 per movie and there were numerous movies offered per month.

17. During the above referenced 146 month period the charge for and the number of special event pay per view offerings (e.g.; boxing or wrestling match) that were accessible to the Defendant through the use of the device varied significantly but taking into account the length of time and the variations in price it is reasonable to state that price *on average* was $30.00 per special event and, on average there was at least one special event per month.

18. Also of assistance in calculating the amount of unauthorized interception is the fact that Comcast did a detailed analysis of its legitimate, paying subscribers in a similar New England franchise as to their pay-per-view purchasing in the month of February, 2003. This analysis showed that a statistically significant number (.17%) of its legitimate, paying, high-end purchasers purchased fourteen (14) or more pay-per-view movies during that particular month.

19. If legitimate, high end, paying subscribers of Comcast purchase fourteen or more pay-per-view movies in a given month it can be inferred that that individuals like the Defendant, utilizing a descrambler without any concern for costs, would also view at least as many pay-per-view movies as the legitimate high end paying subscribers of Comcast.

20. It can also be inferred that that individuals like the Defendant, utilizing a descrambler without any concern for costs, would make a significant number of purchases of the more expensive adult offerings in addition to or in lieu of to lesser expensive pay-per-view movies.

21. Applying the fourteen pay-per-view movies per month for the prices pertaining to the timeframe involved as to this Defendant and only assuming purchasing pay-per-view movies (as opposed to the more expensive adult pay-per-view offerings) we can infer a reasonable value to the unauthorized interception of pay-per-view movies of $55.30 per month.

22. Taking into account the fact that the Defendant was also receiving $65.00 in premium channels through the use of the descrambling device and inferring that she was obtaining at least $55.30 per month of pay-per-view signals (based upon the high end purchasing statistical analysis referenced above) it is easy to infer that the Defendant was obtaining at least $120.30 in unauthorized interception per month over the above referenced 146 month period of time; for a estimated total of $17,563.80.

Subscribed and sworn to, under the pains and penalties of perjury, this 13th day of June 2005.

_____
Mark Mondalto

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.**    ) | Case No.: **04-12696 DPW** |
|                                           ) | |
|   Plaintiff,                              ) | |
|                                           ) | **ORDER OF** |
| vs.                                       ) | **DEFAULT JUDGMENT** |
|                                           ) | |
| **Joyce Belanger**                        ) | |
|                                           ) | |
|   Defendant                               ) | |

The Court, having considered the Plaintiff's Motion for Default Judgment and the accompanying documentation filed with said motion, finds that the Plaintiff is entitled to a Default Judgment as follows:

1. $_____ in statutory damages pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) and/or Title 47 U.S.C. § 553(c)(3)(B); for the violation of 47 U.S.C. § 553(a);

2. Costs $_____ pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A) utilizing the following language or language of a similar nature:

    "The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in accordance with Title 47; and

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961;

5. Attorney's fees of $_____ pursuant to Title 47 U.S.C. 553(c)(2)(C).

**SO ORDERED**.

Dated: _____

_____
United States District Court Judge